**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SIS International Trade, Inc.,** *et al*. | |
| **Plaintiffs,** | **CIVIL ACTION NO. 23-2193** |
| **v.** | |
| **Scudder Realty, LLC** | |
| **Defendant.** | |

<u>**MEMORANDUM OPINION**</u>

Rufe, J.                                                                                     March 20, 2024

Plaintiffs SIS International Trade, LLC, Sagi Geiman, and Shir Gal filed suit against Defendant Scudder Realty, LLC, alleging breach of contract, negligent misrepresentation, and, in the alternative, fraudulent concealment and misrepresentation. Plaintiffs also seek a declaratory judgment that their signed and fully integrated lease is invalid. Defendant has moved to dismiss the Complaint, arguing that (1) the Lease explicitly allocated responsibility to Plaintiffs to ensure that the Rental Space was properly zoned for SIS's intended use and for obtaining permits and (2) Plaintiffs have failed to present any facts establishing that the Defendant had a duty to Plaintiffs. For the reasons stated below, Defendant's Motion to Dismiss will be granted.

## I.        BACKGROUND

The facts as alleged in Plaintiff's Complaint are taken as true for purposes of the Motion to Dismiss. The Township of New Hope passed Ordinance 2022-02, which barred formula retail enterprises (*i.e.* chain retailers) from operating stores within the historic district of New Hope, on January 22, 2022.[1]

Seven months later, on August 25, 2022, SIS, with Geiman and Gal as guarantors, entered into a five-year commercial lease with Scudder Realty for Suite 3 of 44 South Main Street, New

---

[1] Am. Compl. [Doc. No. 10] ¶ 9.

Hope, Pennsylvania, beginning March 1, 2023.[2] Plaintiffs intended to set up one of their Royal Bee franchise stores.[3] Plaintiffs allegedly approached Defendant with their proposal for the Premises, which included a brochure or slide show indicating that the Royal Bee would be a chain franchise retail operation, before the lease was signed.[4] However, due to the previously enacted Ordinance, Plaintiffs were prohibited from obtaining use and operations permits to operate a Royal Bee franchise store.[5] Plaintiffs allege that Defendant knew or should have known of the Ordinance, but failed to tell Plaintiffs about it.

## II.   JURISDICTION

This Court has diversity jurisdiction under 28 U.S.C. § 1332. Plaintiffs are a Nevada LLC, with its members being citizens of California, and two citizens of California.[6] Defendant is a New Jersey LLC, with its members being from Pennsylvania.[7] The amount in controversy exceeds the sum of $75,000. Venue is appropriate in this district, pursuant to 28 U.S.C. § 1391, because the claims arose in this judicial district.

## III.   LEGAL STANDARD

Rule 12(b)(6) allows defendants to file a motion to dismiss for a plaintiff's "failure to state a claim upon which relief can be granted."[8] To survive a Rule 12(b)(6) motion to dismiss, plaintiffs must plead sufficient facts "to state a claim to relief that is *plausible* on its face" as set

---

[2] *Id.* ¶¶ 5, 8.

[3] *Id.* ¶ 5. Royal Bee franchise stores offer a collection of bee and honey related products, including honey, soaps, candles, skin care, books, and other accessories. *See id.* Ex. A [Doc. No. 10-2] at 5.

[4] *Id.* ¶ 6.

[5] *Id.* ¶ 13.

[6] Pl.'s Corp. Disclosure Statement [Doc. No. 17].

[7] Am. Compl. [Doc. No. 10] at 1; Def. Corp. Disclosure Statement [Doc. No. 18].

[8] FED. R. CIV. P. 12(b)(6).

forth in *Bell Atl. Corp. v. Twombly*.[9] "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10] When determining whether the plausibility standard is met, "district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated [and the District Court must] accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, [the] District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"[11]

## IV.   DISCUSSION

Plaintiffs seek a declaration that the Lease is invalid pursuant to the Declaratory Judgments Act[12] under the doctrines of (1) frustration of contractual purpose or impracticability of performance, (2) illegality, and (3) impossibility. In addition, Plaintiffs allege claims of breach of contract, negligent misrepresentation, and fraudulent misrepresentation. Defendant argues that the Lease explicitly allocates responsibility to Plaintiffs to ensure that the Rental Space was zoned for SIS International's intended use, and therefore, the common law doctrines of frustration of contractual purpose or impracticability of performance, illegality, and impossibility are not available to Plaintiffs. Defendant additionally argues that it had no duty to notify Plaintiffs of the Ordinance, and therefore Plaintiff is unable to establish a breach of duty or any misrepresentation or concealment.

---

[9] 550 U.S. 544, 570 (2007) (emphasis added).

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[11] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting *Ashcroft*, 556 U.S. at 678-79).

[12] 42 U.S.C. §§ 7531-41.

## A.  The Contract is Unambiguous

Contract language is ambiguous if it is reasonably susceptible to different constructions and capable of being understood in more than one sense.[13] Courts have the responsibility to determine as a matter of law whether contract terms are clear or ambiguous.[14] To determine whether a contract term is ambiguous, a court will consider the words of a contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning.[15] Objective extrinsic evidence can include the structure of the contract, the bargaining history, and the conduct of the parties that reflects their understanding of the contract's meaning.[16]

Plaintiffs allege that the word "satisfied" in the Lease is ambiguous.[17] The Lease states that: "Tenant is *satisfied* that the Rental Space and the Premises . . . are zoned for the Use as stated above including the display and sale, at retail and ancillary services of candles, soaps, pillows, books, facial care, body care, consumable honey, kitchen ware and other concept related items."[18] Plaintiffs allege in the Complaint that "[t]he word satisfied, used in this context . . . means 'assured or convinced.'"[19] Despite this, Plaintiffs also assert that satisfied is reasonably susceptible to different constructions and capable of being understood in more than one sense because satisfied can be used in the "deductive sense" or the "conditional sense."[20] Though not

---

[13] *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 76 (3d Cir. 2011) (citation omitted).

[14] *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1011 (3d Cir. 1980).

[15] *Id.*

[16] *Baldwin*, 636 F.3d at 76 (quoting *In re New Valley Corp.*, 89 F.3d 143, 150 (3d Cir. 2011)).

[17] Am. Compl. [Doc. No. 10] ¶ 19.

[18] Am. Compl. [Doc. No. 10-1] Ex. A, at 2 (italics added).

[19] Am. Compl. [Doc. No. 10] ¶ 20.

[20] *Id.* ¶¶ 24-26.

clearly expressed, Plaintiffs argue that the "deductive sense" means that satisfaction can be absolute and that the "conditional sense" means that satisfaction must be conditioned on accurate data.[21] Plaintiffs' preferred definition of satisfied is used in the conditional sense: "based on information obtained, it is inferred that the premise is true, conditioned upon accurate data [the Tenant is satisfied.]"[22]

Defendant argues that the term satisfied is properly defined as: "[i]f you are satisfied that something is true or has been done properly, you are convinced about this after checking it."[23] Therefore, according to Defendant, in the context of the Lease, the Tenant is responsible for checking the zoning and is convinced that the Rental Space and Premises are zoned for the Use as described in the Lease.[24]

As a matter of law, the Court concludes that Plaintiffs, by representing that they were satisfied, were obligated to determine whether the property could be used for the purpose Plaintiffs intended. This harmonizes with the provision of the Lease that placed sole responsibility on the Tenant, *i.e.* Plaintiffs, for "acquiring any zoning/use or building permits."[25]

Plaintiffs allege that they had inaccurate data because Defendant failed to inform them that the newly enacted Ordinance prohibited them from utilizing the leased space for a franchise store. Although Plaintiffs argue that they were thousands of miles away, they do not allege that they could not discover the existence of the Ordinance. Whether or not Defendant knew that Plaintiffs intended to use the property as a franchise store is legally irrelevant and therefore so

---

[21] *Id.*

[22] *Id.* ¶ 26.

[23] Def.'s Mot. Dismiss [Doc. No. 11] at 6 (citation omitted).

[24] *Id.*

[25] Am. Compl. [Doc No. 10-1] Ex. A, at 6.

are Plaintiffs' arguments regarding parol evidence. Given the plain meaning of the Lease, Plaintiffs were required to determine the suitability of the property.

        1.     <u>Plaintiffs Have Not Alleged a Basis for</u> <u>Fraud in the Inducement</u>

Plaintiffs also argue that they have alleged a claim for fraud in the inducement and allege that they can demonstrate this through the use of parol evidence. To state a claim for fraudulent misrepresentation and concealment, a plaintiff must allege: (1) misrepresentation or concealment, (2) fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient on the misrepresentation or concealment, and (5) damage to the recipient as a proximate result.[26]

"[T]he parol evidence rule is a substantive rule of contract law that prevents the use of extrinsic evidence to nullify, modify, or augment the terms of a contract."[27] The Pennsylvania Supreme Court has determined that "[o]nce a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract."[28] Parol evidence may nonetheless be "introduced to vary a [fully integrated contract] when a party avers that the contract is ambiguous or [when] a term was omitted from the contract because of fraud, accident, or mistake."[29] As discussed above, the Lease is not ambiguous.

Regarding fraud in the inducement, the Pennsylvania Supreme Court has "restricted the fraud exception to parol evidence to allegations of fraud in the execution of a contract [but] has

---

[26] *Mellon Bank Corp. v. First Union Real Est. Equity and Mortg. Inv.*, 951 F.2d 1399, 1409 (3d Cir. 1991) (citing *Delahanty v. First Pa. Bank, N.A.*, 464 A.2d 1243, 1252 (1983)).

[27] *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 213 (3d Cir. 2022).

[28] *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436–37 (Pa. 2004).

[29] *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 204 (Pa. 2007) (citing *Yocca*, 854 A.2d at 437).

refused to apply the exception to allegations of fraud in the inducement of a contract."[30] Therefore, parol evidence cannot be admitted on the basis that an opposing party made false representations that induced the complaining party to agree to the contract.

"The parol evidence rule *acting alone* does not prevent fraudulent inducement claims arising out of integrated contracts" because the party seeking to introduce parol evidence is not doing so to vary the terms of the contract but to prove a pre-contractual misrepresentation or concealment.[31] Nonetheless, if a contract has a fraud-insulating provision, the parol evidence rule bars extrinsic evidence that varies the fraud-insulating provision.[32] Fraud-insulating provisions can take many forms: (1) a no-reliance clause whereby a party expressly disclaims reliance on another party's precontractual representations, (2) a clause imposing joint responsibility for precontractual representations, and (3) a superseding clause whereby the parties agree that the representations in the contract either supersede all prior representations or are the only representations made.[33] A superseding clause, the type of integration clause in the Lease at issue here, effectively erases the existence of prior representations.[34] As the Third Circuit held:

> When an integrated contract includes a fraud-insulating term – to form what may be called an 'integration-plus' contract – that extends the reach of the parol evidence rule. In that circumstance, the parol evidence rule prevents the use of extrinsic evidence to vary the fraud-insulating term. And without such evidence, it is virtually impossible to establish the justifiable-reliance element needed for a fraud claim. As the Pennsylvania Supreme Court has explained for integrated

---

[30] *Battle Born Munitions Inc. v. Dicks Sporting Goods Inc.*, No. 22-1005, 2023 WL 4758449, at *5 (3d Cir. July 26, 2023) (quoting *Toy*, 928 A.2d at 204–05) (internal quotations omitted).

[31] *Id.* (quoting *SodexoMAGIC, LLC*, 24 F.4th at 213) (internal quotes omitted); *see also K&G Contracting, Inc. v. Warfighter Logistics, Inc.*, No. 23-1855, 2023 WL 5618932, at *6–10 (E.D. Pa. Aug. 30, 2023) (undertaking an analysis of recent Third Circuit and district court decisions regarding the effect of fraud-insulating clauses).

[32] *SodexoMAGIC, LLC*, 24 F.4th at 214 ("[T]he parol evidence rule prevents the use of extrinsic evidence to vary the fraud-insulating term.").

[33] *Id.* at 213–14.

[34] *Id.* at 214.

7

contracts, "due to the parol evidence rule's operation, a party cannot be said to have justifiably relied on prior *representations* that he has superseded and disclaimed."[35]

Here, the Lease includes such a superseding fraud-insulating integration clause denying the existence of any prior representation. The parties agreed that the Lease replaces "any and all other leases, offers, documents, receipts, writings should any of these exist. . . . At such time it is executed it replaces any and all other written or verbal agreement(s)."[36] Plaintiffs attempt to bring in extrinsic evidence to alter the fraud-insulating term, which is prohibited by the parol evidence rule. Therefore, even assuming that material misrepresentations were made, the parol evidence rule disallows those misrepresentations from being admitted.

Plaintiffs urge the Court to undertake the *LeDonne* test, which provides a narrow exception to the general rule that the parol evidence rule applies to claims of fraud in the inducement.[37] However, this exception only applies to a specific set of facts: "sales and leases of real property where oral representations regarding a lack of physical defects in the property were made and the purchaser or lessee was not able to discover, through visual inspection, that the representations were false."[38] There are no allegations of a physical defect in the property.

---

[35] *Id.*

[36] Am. Compl. [Doc No. 10-1] Ex. A, at 19.

[37] *LeDonne v. Kessler*, 389 A.2d 1123, 1130 (Pa. Super. Ct. 1978) ("[W]e should balance the extent of the party's knowledge of objectionable conditions derived from a reasonable inspection against the extent of the coverage of the contract's integration clause in order to determine whether that party could justifiably rely upon oral representations without insisting upon further contractual protection or the deletion of an overly broad integration clause."); *see also Mancini v. Morrow*, 458 A.2d 580, 584–85 (Pa. Super. Ct. 1983) (applying the *LeDonne* balancing test).

[38] *AAMCO Transmissions, Inc. v. Wirth*, No. 11-4250, 2011 WL 6088671, at *6 (E.D. Pa. Dec. 7, 2011) (quoting *HCB Contractors v. Liberty Place Hotel Assocs.*, 652 A.2d 1278, 1280 (Pa. 1995)); *see also Hena v. Vandegrift*, 612 F. Supp. 3d 457, 481 (W.D. Pa. 2020) (holding that the court in *LeDonne* did not create an exception to the parol evidence rule for all claims of fraudulent inducement in real estate inspection cases; rather the *LeDonne* balancing test would only be utilized if an integration clause is limited to representations about the physical appearance of the property based upon a visual inspection).

Therefore, the *LeDonne* test is inapplicable, and Plaintiffs cannot plausibly state a claim for fraudulent misrepresentation.

The parol evidence rule also applies to claims of negligent misrepresentation.[39] "The difference between fraud and negligent misrepresentation, namely a state of mind requirement for the fraud claim, does not affect the rationale behind Pennsylvania's parol evidence rule."[40]

Here, Plaintiffs allege that the Defendant knew or should have known of the Ordinance's restrictions and failed to notify Plaintiffs. Plaintiffs claim for negligent representation has the same underlying basis as their fraudulent misrepresentation and inducement claim: the representations, whether fraudulent or negligent, induced Plaintiffs to enter the Lease. The parol evidence rule applies with equal weight to the negligent misrepresentation claim and effectively denies Plaintiffs ability to plausibly state a claim for negligent or fraudulent misrepresentation.

### B. The Court Cannot Provide a Declaratory Judgment Under Common Law Theories of Frustration, Impracticability, Illegality, and Impossibility Because Plaintiffs Expressly Allocated Risk

Plaintiffs seek a declaratory judgment that the Lease is invalid under the common law doctrines of (1) frustration of contractual purpose or impracticability of performance, (2) illegality, and (3) impossibility. Defendant argues that the parties expressly allocated risk in the Lease, and therefore, Plaintiffs cannot raise these common law doctrines when seeking a declaratory judgment.[41] Plaintiffs further argue that allocation of risk is only "a valid theory if the contract was negotiated with transparency of risk and reward—a traditional 'meeting of the minds.'"[42]

---

[39] *Roundhill Condo. Ass'n v. NVR, Inc.*, No. 19-442, 2019 WL 3288103, at *5–6 (E.D. Pa. July 22, 2019).

[40] *Id.* (quoting *Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc.*, 94 F. Supp. 2d 589, 595 (E.D. Pa. 1999)).

[41] Def.'s Mot. Dismiss [Doc. No. 11] at 4–5.

[42] Pls.' Mem. Opp'n Def.'s Mot. Dismiss [Doc. No. 12] at 4.

Under Pennsylvania law, the parties to a contract have broad discretion to allocate risks between them.[43] Only where there has been no contractual allocation of risk should a court determine the allocation based on common law theories, such as frustration of purpose and impossibility.[44] Courts may examine other provisions or language in the contract to determine whether the parties have agreed upon an allocation of risk.[45]

As discussed above, Plaintiffs expressly warrant in the Lease that they are "satisfied that the Rental Space and the Premises . . . are zoned for the Use as stated above" and that they "shall obtain all necessary certificates of occupancy, zoning and planning, fire and safety; permits; and other approvals or certificates permitting the Tenant to occupy and use the Retail Space for the Use, as further provided for herein in Section 13."[46] Similarly, Section 13 provides that "[t]he Tenant shall be solely responsible for the cost of and for acquiring any zoning/use or building permits and work required for their occupancy or such permits), should such need exist. The Tenant shall make diligent efforts to obtain any approvals and the Landlord shall cooperate.[47] The provisions of the Lease demonstrate a clear allocation of risk to the Plaintiffs to ensure that Plaintiffs' intended use is permitted by local regulation, and Plaintiffs have alleged no facts to the contrary.

---

[43] *1600 Walnut Corp. v. Cole Haan Co. Store*, 530 F. Supp. 3d 555, 558 (E.D. Pa. 2021) (citing *Albert M. Greenfield & Co. v. Kolea*, 380 A.2d 758, 760 (Pa. 1977)).

[44] *Id.*; *CL1 Philadelphia, LLC v. Nat'l Apostolate of Maronites*, No. 20-1659, 2023 WL 2588438, at *2 (E.D. Pa. Mar. 21, 2023) ("[C]ourts should not rely on common law theories of risk allocation [impossibility, impracticability and/or illegality] . . . when the contract clearly allocates the risk of non-performance between parties . . . .")

[45] *In re Conneaut Lake Park, Inc*., 564 B.R. 495, 508 (Bankr. W.D. Pa. 2017) (citing Restatement (Second) of Contracts § 261 cmt. c (1981)) ("[I]f the facts and circumstances of the case provide for an agreed upon allocation of risk, that allocation generally will not be disturbed under the doctrine of impossibility of performance."); *see Albert M. Greenfield & Co. v. Kolea*, 380 A.2d at 759–60 (examining other provisions in the lease when determining whether impossibility or impracticability could excuse parties from performing their obligations under the lease); *see also* Restatement (Second) of Contracts § 261 ("Where . . . a party's performance is made impracticable . . . his duty to render performance is discharged, unless the language or the circumstances indicate the contrary.").

[46] Am. Compl. [Doc No. 10-1] Ex. A, at 2.

[47] *Id.* at 6.

### C.  Plaintiffs Cannot Allege a Breach of Contract Claim

Plaintiffs have asserted three theories under their breach of contract claim: (1) breach of the covenant of good faith and dealing, (2) anticipatory repudiation, and (3) breach of the implied covenant of quiet enjoyment. To state a claim for breach of contract, a plaintiff must establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) damages.[48] For the purposes of the Motion to Dismiss, the only element in dispute is whether Plaintiffs have sufficiently alleged a breach of duty.[49]

> 1.  Plaintiffs Cannot Bring a Stand-Alone Breach of Covenant of Good Faith and Fair Dealing Claim

Plaintiffs assert that Defendant breached the covenant of good faith and fair dealing by (1) misrepresenting an essential term of the lease and (2) failing to indicate to Plaintiffs that they would not be able to obtain the necessary use and zoning permits because of the Ordinance.[50]

In Pennsylvania, a claim of breach of the covenant of good faith is generally subsumed in a breach of contract claim.[51] Therefore, the covenant of good faith functions as an "interpretive tool" to aid the court in evaluating breach of contract claims.[52] However, the implied duty is never divorced from specific clauses or duties imposed by a contract and cannot be used to override an express contractual term.[53] Even though Pennsylvania has recognized limited

---

[48] *McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010) (citation omitted).

[49] Defendant does not dispute that the Lease constitutes a valid contract between Plaintiffs and Defendant, and even though Defendant strongly contests any damages discussed in the Complaint, admits that Plaintiffs have likely met the pleading standard with respect to damages. Def.'s Mot. Dismiss [Doc. No. 11] at 12.

[50] Am. Compl. [Doc. No. 10] ¶¶ 43-44.

[51] Although Pennsylvania courts have recognized the general duty of contracting parties to perform their contractual obligations in good faith, they consistently have held that this implied duty does not create a cause of action separate from a cause of action for breach of contract. *Tuno v. NWC Warranty Corp.*, 552 Fed. App'x 140, 144 (3d Cir. 2014).

[52] *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 91 (3d Cir. 2000).

[53] *Id.*; *Murphy v. Duquesne Univ. of The Holy Ghost*, 777 A.2d 418, 434 n.11 (Pa. 2001).

11

situations where claims for breach of the covenant of good faith and fair dealing can stand alone, there has been a historical reluctance to recognize an independent claim for breach of that duty.[54]

Additionally, a plaintiff's claim of breach of the covenant of good faith and fair dealing can be declined if it is considered redundant.[55] If a plaintiff claims a violation of the covenant of good faith and fair dealing along with a claim alleging fraud based on the same set of facts, Pennsylvania courts likely would decline to proceed with the breach of the covenant of good faith and fair dealing claim.[56] In *Tuno v. NWC Warranty Corp*, the Third Circuit found no error in the district court's decision to dismiss a breach of good faith and fair dealing claim for redundancy when the claim was based on the same allegations underlying the Plaintiff's misrepresentation claim.[57]

Here, Plaintiffs use the same set of facts in the breach of implied duty of good faith and fair dealing as their fraudulent misrepresentation claim. Plaintiffs' claims for breach of good faith and fair dealing and fraudulent misrepresentation have the same core allegations: there was misrepresentation regarding the Ordinance's effect on Plaintiffs. This is redundant. Plaintiffs cannot plausibly state a claim based on a breach of the implied duty of good faith and fair dealing.

---

[54] *Hordis v. Cabot Oil & Gas Corp.*, No. 19-296, 2020 WL 2128968, at *5 (M.D. Pa. May 5, 2020); *Northview Motors, Inc.*, 227 F.3d at 91; *Tuno*, 552 Fed. App'x at 144.

[55] *Northview Motors, Inc.*, 227 F.3d at 92.

[56] *Id.*; *see also Truefit Sols. v. Bodies Done Right, LLC*, No. 19-145, 2019 WL 7187406, at *7 (W. D. Pa. Dec. 26, 2019) (applying *Northview Motors, Inc.* and *Tuno* to dismiss a party's claim for breach of the implied covenant of good faith with prejudice).

[57] *Tuno*, 552 Fed. App'x at 144.

2.    <u>Plaintiffs Do Not Meet the High Standard for Anticipatory Repudiation</u>

Plaintiffs assert that Defendant anticipatorily repudiated the Lease by repeatedly claiming defaults.[58] To constitute anticipatory breach under Pennsylvania law there must be an absolute and unequivocal refusal to perform or a distinct and positive statement of an ability to do so.[59] Pennsylvania courts have applied this doctrine in a rigorous manner, finding anticipatory repudiation only under the most clear-cut and unmistakable instances of refusal to perform.[60] Here, though the Plaintiffs attach numerous letters written by Defendant claiming defaults, the letters state that "the Lease remains in full force and effect."[61] Under Pennsylvania's strict application of the anticipatory repudiation rule, Plaintiffs cannot reasonably show that the series of default notices rise to absolute and unequivocal refusal when Defendant had expressed intention to remain committed to the Lease rather than repudiate it.

3.    <u>Plaintiffs Failed to Allege a Wrongful Act by the Defendant and Cannot Show a Breach of the Implied Covenant of Quiet Enjoyment</u>

Plaintiffs assert that Defendant has breached the implied covenant of quiet enjoyment by affirmatively failing to reveal the existence of the Ordinance to Plaintiffs.[62] Plaintiffs also allege that the property is unusable to them because they are unable to obtain permits under the Ordinance.[63]

---

[58] Am. Compl. [Doc No. 10] Ex. A, ¶ 46.

[59] *2401 Pa. Ave. Corp. v. Fed'n of Jewish Agencies of Greater Phila.*, 489 A.2d 733, 736 (Pa. 1985) (citation omitted).

[60] *In re MK Lombard Grp., Ltd.*, No. 04-1700, 2005 WL 735993, at *8 (E.D. Pa. Mar. 31, 2005).

[61] Am. Compl. [Doc. No. 10-4] at 1.

[62] Am. Compl. [Doc. No. 10] ¶ 47.

[63] *Id.* ¶ 48.

"The covenant of quiet enjoyment is breached when a tenant's possession is impaired by acts of the lessor or those acting under him. The impairment of the lessee's possession need not be total. A plaintiff need only show that the utility of the premises has been substantially decreased."[64] A breach of the covenant of quiet enjoyment does not have to involve a structural change to the property.[65] However, more than mere infringement of the tenant's rights needs to be shown, and a wrongful action of the landowner is required.[66]

Whether Defendant's failure to reveal existence of the Ordinance is a breach of quiet enjoyment depends on whether the Defendant's action or lack thereof is wrongful. If there is no duty for Defendant to notify Plaintiffs of the Ordinance, Plaintiffs are unable able to show that the Defendant's inaction is considered wrongful. In a commercial lease context, no special relationship between the parties exists.[67] When no special relationship exists, Defendants have no duty to notify Plaintiffs of relevant ordinances.[68] Though Plaintiffs refer to § 551 of the Restatement (Second) of Torts, § 551 only imposes a duty to disclose "matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and

---

[64] *SEPTA v. Drummond*, No. 21-4212, 2022 WL 784531, at *5 (E.D. Pa. Mar. 15, 2022) (quoting *Checker Oil Co. of Del., Inc. v. Harold H. Hogg, Inc.*, 380 !.2d 815, 818 (Pa. Super. 1977)).

[65] *Lebbie v. LFL Shady*, L.P., No. 22-1062, 2023 WL 8809301, at *5 (W.D. Pa. Dec. 20, 2023); *Kohl v. PNC Bank Nat'l Ass'n*, 912 A.2d 237, 249–51 (Pa. 2006).

[66] *Kohl*, 912 A.2d at 250–51.

[67] *Greenwood Land Co. v. Omnicare, Inc.*, 2010 WL 1235903, at *4 (W.D. Pa. Feb. 22, 2010) (assuming that no special relationship exists between the parties when evaluating whether a plaintiff's negligence claim is sufficiently distinct from plaintiff's breach of the lease claim) (citing *2401 Walnut, L.P. v. Am. Express Travel Related Servs. Co.*, No. 07-1281, 2009 WL 398727, at *6 (E.D. Pa. Feb. 16, 2009)); *eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 23 (Pa. Super. Ct. 2002) (citing with approval a Pennsylvania Commonwealth case for the proposition that there is no special relationship between parties to an arm's length commercial lease agreement); *see also Jenny B. Realty, LLC v. Danielson, LLC*, 456 F. Supp. 3d 307, 318–19 (D. Mass. 2020) (finding no fiduciary duty between two parties participating in an arm's length commercial lease transaction); *Gander Mountain Co. v. Islip U-Slip LLC*, 923 F. Supp. 2d 351, 367 (N.D.N.Y. 2013), aff'd, 561 F. App'x 48 (2d Cir. 2014) (landlord and tenant did not have a fiduciary or confidential relationship where they were sophisticated parties to an arm's length transaction).

[68] *Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644, 656 (W.D. Pa. 1999) ("It is axiomatic, of course, that silence cannot amount to fraud in the absence of a duty to speak . . . . This duty does not normally arise unless there is a confidential or fiduciary relationship between the parties.").

confidence between them."[69] Plaintiffs have not alleged an alternative source of duty that Defendant owed to them. Therefore, Plaintiffs have failed to identify a wrongful action by the Defendant because no duty has been breached. Plaintiff cannot assert a breach of the implied covenant of quiet enjoyment.

**D.     CONCLUSION**

For the aforementioned reasons, Defendant's Motion to Dismiss is granted. An order will be entered.

---

[69] Restatement (Second) of Torts § 551(2)(a).